THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MANUEL LEE JONES                                                                          PLAINTIFF

v.                              Case No. 4:19-cv-00938-KGB

NORTH LITTLE ROCK SCHOOL DISTRICT                                          DEFENDANT

## OPINION AND ORDER

Before the Court are plaintiff Manuel Lee Jones' motion to amend complaint/addition of parties/amendment pleadings and defendant North Little Rock School District's ("the District") motion for summary judgment (Dkt. Nos. 12; 15). For the reasons set forth below, the Court grants Mr. Jones' motion to amend complaint and grants the District's motion for summary judgment. The Court denies as moot the pending motion *in limine* (Dkt. No. 25).

I.      **Motion To Amend Complaint**

Pending before the Court is Mr. Jones's motion to amend complaint/additions of parties/amendment pleadings (Dkt. No. 12). In his initial complaint, Mr. Jones named as defendants the District, Cheryle Reinhart, Bobby Acklin, and Allen Pennington (Dkt. No. 2). He asserts claims pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, specifically claiming that he was fired because of his "disability with prostate cancer," was "threatened with losing [his] job for job abandonment on the last day of [his] approved family leave," and was "not provided the opportunity for reasonable accommodation" (Dkt. No. 2, at 2).

In response to the Court's Order requesting that he show cause within 30 days from entry of the Order as to why his claims against individual defendants Mr. Acklin, Ms. Reinhart, and Mr. Pennington should not be dismissed, Mr. Jones in a written filing withdrew his ADA claims against individual defendants Mr. Acklin, Ms. Reinhart, and Mr. Pennington (Dkt. Nos. 4; 5). Therefore,

the Court dismissed without prejudice individual defendants Mr. Acklin, Ms. Reinhart, and Mr. Pennington (Dkt. No. 8).

Pursuant to the Court's final scheduling order, the deadline to move to amend pleadings and to add parties was March 1, 2021 (Dkt. No. 11). On March 1, 2021, Mr. Jones filed his motion to amend (Dkt. No. 12). Based on the Court's review of the docket and record before it, the District never responded to the motion.

The Court understands that Mr. Jones seeks leave to amend to raise additional state law claims, citing both the Arkansas Teacher Fair Dismissal Act, Arkansas Code Annotated § 6-17-1501 *et seq.*, and the Public School Employee Fair Hearing Act, Arkansas Code Annotated § 6-17-1701 *et seq.* (*Id.*, at 2-3). Mr. Jones contends that, after he provided notice within the mandated time of the statute, the defendant failed to grant a hearing to him (*Id.*, at 2). Mr. Jones identifies the defendant as the District (*Id.*, at 1). Mr. Jones does not state that he wishes to include any parties as defendants other than the currently named District.

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend a pleading once as a matter of course within 21 days after serving it or within 21 days after service of the responsive pleading or a motion under Rule 12(b)(6). After the 21-day period expires, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court should give leave freely when justice so requires, but "parties do not have an absolute right to amend their pleadings . . . ." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). "[D]enial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

2

"A district court's denial of leave to amend a complaint may be justified if the amendment would be futile." *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013).

Mr. Jones' motion to amend was filed outside of the 21 days when amendments are allowed as a matter of course. The claim that Mr. Jones proposes asserting is a state law claim. The parties agree that Mr. Jones began working for the District as a paraprofessional in the Alternative Learning Environment classroom in 2017 (Dkt. No. 21, at 1). It is not clear that Mr. Jones is qualified to pursue the relief he seeks under the Arkansas Teacher Fair Dismissal Act, given the position he held and the length of time he was employed by the District at the time of the events giving rise to his claim. *See* Ark. Code Ann. § 6-17-1502 (describing qualifications for "probationary teacher" and "teacher"). Further, the Arkansas Teacher Fair Dismissal Act specifies the "exclusive remedy" to challenge board action regarding a non-renewal decision. *See* Ark. Code Ann. § 6-7-1510(d). In this case, the District did not contest the motion to amend.

As a result, although the Court will not reach the merits of the claim, the Court grants Mr. Jones' motion to amend/additions of parties/amendment pleadings (Dkt. No. 12), permits the addition of Mr. Jones' claim against the District under the Arkansas Teacher Fair Dismissal Act and the Public School Employee Fair Hearing Act, but the Court dismisses without prejudice these state law claims asserted by Mr. Jones against the District because the Court declines to exercise supplemental jurisdiction over the state law claims, having granted judgment in favor of the District in this Order on Mr. Jones' federal claim.

**II.    Motion For Summary Judgment**

    **A.    Statement Of Facts**

The Court's statement of facts is drawn from the parties' statements of facts and exhibits of record (Dkt. Nos. 15; 17; 18; 21). The Court notes that Local Rule 56.1 of the Local Rules of

the United States District Court for the Eastern and Western Districts of Arkansas provides that all material facts set forth in the statement filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party. Local Rule 56.1(c). As such, the Court deems admitted each statement of material facts to the extent the statements are not controverted by the opposing party.

Mr. Jones brings claims under the ADA (Dkt. No. 21, ¶ 1). Mr. Jones began working for the District as a paraprofessional in the Alternative Learning Environment ("ALE") classroom in 2017 (*Id.*, ¶ 2). The District maintains that Mr. Jones' position required him to aid in the instruction for children placed in the District's alternative learning environment, which was all onsite and direct instruction (Dkt. No. 16, at 2).

Mr. Jones became ill at the start of the 2018-2019 school year and missed nearly the entire year, September through May (Dkt. No. 21, ¶ 3). Between September 2018 and May 2019, Mr. Jones exhausted every form of leave and supplementary leave available to him under District policies (*Id.*, ¶ 4). Mr. Jones was approved for leave under the Family and Medical Leave Act ("FMLA") in October 2018, with an FMLA leave start date of September 19, 2018 (Dkt. No. 15-7). Mr. Jones was diagnosed with prostate cancer on December 19, 2018 (Dkt. No. 15-6, at 2).

Mr. Jones maintains that he told Allen E. Pennington, Principal of Amboy Elementary School, of his diagnosis on the same day, December 19, 2018 (Dkt. No. 15-6, at 3). Mr. Jones' FMLA leave ended on December 20, 2018 (Dkt. No. 15-7). Mr. Jones alleges that, on the same day, December 20, 2018, Mr. Pennington emailed him stating that, if Mr. Jones did not return to work by January 7, 2019, Mr. Jones would be terminated for job abandonment (Dkt. Nos. 15-6, at 3; 15-4).

After exhausting all available sick and supplementary leave, Mr. Jones applied for extra sick leave through the Sick Leave Bank Committee at the District but was denied because he had been with the District for a short period of time and had not contributed enough to the sick leave bank, per policy (Dkt. No. 21, ¶ 5). Based on record evidence before the Court, the purpose of the District's Sick Leave Bank is to provide eligible employees, who have exhausted all of their accumulated sick leave, the means to obtain additional sick leave days upon approval of the Sick Leave Bank Committee (Dkt. No. 15-8). Mr. Jones' request for additional sick leave was denied by the Sick Leave Bank Committee on December 12, 2018 (Dkt. No. 15-8). The stated reason for the denial was "Committee disapproved due to lack of years of experience with the North Little Rock School District" (Dkt. No. 15-8, Dkt. No. 2-5). According to the District's sick leave policy, the Sick Leave Bank Committee is the final authority on all matters concerning implementation of the Bank (Dkt. No 15-8, at 3).

In its motion for summary judgment, the District also alleges that Mr. Jones failed to provide two forms of medical documentation to support a request for sick leave, as required by the policy (Dkt. No. 15-8). Mr. Jones maintains that he was approved by another District contractor for short and long-term disability and was required to provide medical condition updates (Dkt. No. 21, ¶ 6).

On January 4, 2019, Mr. Jones submitted a request for approval of absence for the dates of January 7, 2019, through February 28, 2019 (Dkt. Nos. 15-10; 21, ¶ 7 ). This request was submitted to Cheryle Reinhart, Executive Director of Human Resources (Dkt. No. 15-6, at 1). Despite having no sick or supplementary leave available, Mr. Jones' request was approved, and Mr. Jones was granted leave without pay for the remainder of the 2018-2019 school year (Dkt. Nos. 15-4; 21, ¶ 7). Mr. Jones did not work at all during the second semester of the 2018-2019 school year (Dkt.

5

No. 21, ¶ 8). The District asserts that Mr. Jones never provided the District with medical documentation nor provided the District with a possible return date (Dkt. No. 17, ¶ 6). Mr. Jones asserts that documents were provided to the District by his doctor's office (Dkt. No. 15-6, at 2).

On April 22, 2019, Mr. Jones was informed that the District did not intend to renew his position as a Paraprofessional for Amboy Elementary as a result of his excessive absenteeism (Dkt. Nos. 2-5, at 1; 21, ¶ 9). According to the District's letter notifying Mr. Jones that his position had been non-renewed:

> "Excessive Sick Leave" is absence from work, whether paid or unpaid, that exceeds twelve (12) days in a contract year for an employee that is not excused pursuant to: District policy; the Family Medical leave Act; a reasonable accommodation of disability under the American's With Disabilities Act; or due to a compensable Workers' Compensation claim. . . . [sic]

(Dkt. No. 15-5). The letter also states that "Grossly Excessive Sick Leave" is "absence from work, whether paid or unpaid, that exceeds ten percent (10%) of the employee's contact length," with the same exceptions as "Excessive Sick Leave" above (*Id.*).

The District's nonrenewal letter states that Mr. Jones had "excessive absences, whatever the cause, to the extent that [he was] not carrying out [his] assigned duties to the degree that the efficient operation of the school district is substantially adversely affected." (*Id.*). The letter further states that Mr. Jones' absences were "not subject to the FMLA or are in excess of what is protected under the FMLA." (*Id.*).

As of April 22, 2019, Mr. Jones missed over 51% of his workdays not including his approved FMLA leave from September 9, 2018, to December 20, 2018 (Dkt. No. 21, ¶ 10). The District explained this in its letter. The letter also indicated that, on days when Mr. Jones was absent, his "work is either not done or must be performed by other employees or a substitute" (Dkt. No. 15-5).

The District maintains that it continued to communicate with Mr. Jones, informing him of leave exhaustion, and options moving forward (Dkt. No. 21, ¶ 11). Mr. Jones disputes that (*Id.*).

In an undated notice regarding Mr. Jones' return to work following his leave, Mr. Jones was informed that "[r]easonable accommodations may be made on a case-by-case basis in close coordination with management and Human Resources." (Dkt. No. 2-3).

On May 22, 2019, Mr. Jones submitted an appeal of the District's nonrenewal decision, requesting an appeal hearing (Dkt. No. 15-6). In his appeal, Mr. Jones argued that the District "never discussed or formally offered a reasonable accommodation for [his] disability under the Americas' with Disability Act." [sic] (Dkt. No. 15-6, at 2). Mr. Jones also challenged the District's assertion that his absence "substantially adversely affected" the District's operation (Dkt. No. 15-6, at 2).

In his appeal, Mr. Jones stated "the NLRSD did not afford me a reasonable accommodation due to my disability, or maybe it did with my LWOP request, which can be considered a reasonable accommodation under ADA." (Dkt. No. 15-6, at 2-3).

On September 25, 2019, Mr. Jones filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming that he was terminated by the District because of his disability in violation of the ADA (Dkt. No. 15-1). On September 30, 2019, the EEOC stated that, based upon investigation, the EEOC was unable to conclude that the information obtained established violations of the asserted statutes (Dkt. No. 15-2).

Mr. Jones filed his initial complaint in this case on December 27, 2019 (Dkt. No. 2). In his complaint he alleges that this Court has jurisdiction over his claims under the ADA because the District did not provide him a reasonable accommodation (Dkt. No. 2, ¶ 3). In the complaint, Mr. Jones states: "I believe I was fired because of my disability with prostate cancer. I was threatened

7

with losing my job for job abandonment on the last day of my approved family leave. Was not provided the opportunity for reasonable accommodation." (Dkt. No. 2, ¶ 5).

The District filed the present motion for summary judgment on June 24, 2021 (Dkt. No. 15), arguing that the District non-renewed[1] Mr. Jones because of his excessive absences from work, absences which were not protected by any state or federal law (Dkt. No. 16, at 2). The District further argues that Mr. Jones cannot make a *prima facie* showing of discrimination because he was unable to perform the essential functions of his position with the District (*Id.*, at 3). The District also maintains that Mr. Jones never made a request for an accommodation but simply asked for leave as his illness became indefinite (*Id.*). The District denies all claims brought against it by Mr. Jones or that it violated any applicable law (Dkt. No. 21, ¶ 12). Further, the District asserts that Mr. Jones was not discriminated against for any reason in violation of applicable law nor did the District violate any rights or duties owed to Mr. Jones (*Id.*, ¶ 13).

### B. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local*, 373, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

---

[1] "Non-Renewed" is a technical term under the Arkansas Public School Employee Fair Hearing Act, Ark. Code Ann. § 16-17-1701, that allows the employee's contract to expire and not be renewed for a new term, but the District concedes this is adverse job action (Dkt. No. 16, at 2).

The party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). If the moving party carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586, 587). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

      **C.**    **ADA Legal Standards**

The ADA makes it unlawful for a covered employer to discriminate against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "Discrimination" under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

To succeed with a failure-to-accommodate claim, a plaintiff "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). To make out a *prima facie* case, a plaintiff must show that he or she "'(1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability.'" *Id.* (quoting *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012)). To be considered disabled within the meaning of the ADA, a plaintiff must show "a

9

physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). "To be a qualified individual under the ADA, an employee must '(1) possess the requisite skill, education, experience, and training for [her] position; and (2) be able to perform the essential job functions, with or without reasonable accommodation.'" *Kallail.*, 691 F.3d at 930 (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003)).

Reasonable accommodation disability claims are not evaluated under the *McDonnell Douglas* burden-shifting analysis. Rather, "a modified burden-shifting analysis" is applied. *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) (citing *Fenney*, 327 F.3d at 712 (collecting cases)). "In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." *Peebles*, 354 F.3d at 767. This analysis requires that "[a] reasonable accommodation that imposes no undue burden on the employer must [] be shown." *Id.*. "[T]he plaintiff's burden, upon a defendant's motion for summary judgment, is only to show that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases." *Id.*, at 768 (quotations omitted). "Upon such a showing, the employer is left to 'show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances.'" *Id.*

Further, "[t]o determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'" *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009). This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of his disability. *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790, 795 (8th Cir.

2007). To show that an employer did not engage in an interactive process, the employee must prove:

> (1) the employer knew about the employee's disability;
> (2) the employee requested accommodations or assistance for his or her disability;
> (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and
> (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Peyton*, 561 F.3d at 902.

### D. Discussion Of ADA Claim

To succeed with a failure-to-accommodate claim, Mr. Jones "must establish both a *prima facie* case of discrimination based on disability and a failure to accommodate it." *Schaffhauser*, 794 F.3d at 905. Based on the record evidence before the Court and viewing the record evidence in the light most favorable to Mr. Jones, the Court concludes that Mr. Jones has failed to establish a *prima facie* case of discrimination based on his disability and a failure to accommodate that disability.

To make out a *prima facie* case, Mr. Jones must show that he "'(1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability.'" *Id.* The District argues that Mr. Jones "was not qualified for purposes of the ADA because he could not perform the essential functions of his job, with or without an accommodation" and that his position was non-renewed for legitimate, non-discriminatory reasons (Dkt. No. 16, at 7, 10)

The determination of whether an individual is qualified for purposes of the ADA, 42 U.S.C. §§ 12101, *et seq.*, is a two-step process and evaluated at the time of the employment decision. The first inquiry is to determine if the individual possesses the requisite skills, education, certification, or experience necessary for the job; the second inquiry is to determine whether the individual can,

11

despite his impairments, perform the essential functions of the job either with or without reasonable accommodation. *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1045 (8th Cir. 1999). Mr. Jones can establish the first part of the inquiry by virtue of having previously held the position of an ALE paraprofessional. *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 674 (8th Cir. 2001). However, Mr. Jones "may not rely on past performance alone to establish that []he is a qualified individual when the record clearly reflects diminished or deteriorated abilities." *Browning*, 178 F.3d at 1048. Like the employees in *Browning* and *Hatchett*, nothing in the record demonstrates that Mr. Jones could perform the essential functions of the job at the time of the employment decision he challenges.

The ADA provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). The Eighth Circuit has "consistently stated that regular and reliable attendance is a necessary element of most jobs." *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 544 (8th Cir. 2018) (citing *Greer v. Emerson Elec. Co.*, 185 F.3d 917, 921 (8th Cir. 1999) (quotations omitted). While "regular attendance at work is an essential function of employment," permitting an employee to take "a medical leave of absence might, in some circumstances, be a reasonable accommodation." *Brannon v. Luco Mop Co.,* 521 F.3d 843, 849 (8th Cir. 2008) (citing *Browning v. Liberty Mut. Ins. Co.,* 178 F.3d 1043, 1049 n. 3 (8th Cir.1999)); *see also* 29 C.F.R. § 1630.2(*o*)(2)(ii) (reasonable accommodation may include "part-time or modified work schedules"). A number of courts have "concluded that a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work." *Graves v. Finch Pruyn & Co.,* 457 F.3d 181, 186 n. 6 (2d Cir.2006) (collecting cases); *see also Hill v. Walker*, 918 F. Supp. 2d 819, 829-30 (E.D. Ark.), *aff'd*, 737 F.3d 1209 (8th Cir. 2013); *Peyton v. Fred's Stores of Ark., Inc.,* 561 F.3d 900, 903 (8th Cir.2009) ("[A]

12

request for an indefinite leave of absence. . . is not a reasonable accommodation under the ADA."). Mr. Jones' illness kept him from attending work and kept him from being able to perform any of his job functions as an ALE paraprofessional (Dkt. No. 16, at 9). Mr. Jones was not on campus from September 2018 through the end of the year in June 2019 (Dkt. No. 15-9, at 54, ¶ 18-22). Mr. Jones acknowledged that, as part of the role of an ALE paraprofessional, he had been trained to hold[] kids down when they [were] off their meds" or "run kids down the hallway and off campus." (Dkt. No. 15-9, at 53, ¶ 22 – 54, ¶ 1). During his deposition, he acknowledged that, he "couldn't do that anymore." (*Id.*).

The Eighth Circuit "has recognized that persistent absences from work can be excessive even when the absences are with the employer's permission." *Lipp*, 911 F.3d, at 545 (citations omitted). Under the District's own policies, Mr. Jones' absences were grossly excessive (Dkt. No. 2-5, at 1). The fact that Mr. Jones was granted unpaid leave for the second half of the school year does not prevent the District from considering those absences in its renewal determinations. When Mr. Jones was absent, his work was either not done or had to be completed by other employees or a substitute (Dkt. No. 15-5, at 1).

To the extent that Mr. Jones argues that he should have been given additional leave without pay as a reasonable accommodation, "[a] reasonable accommodation is one which enables a[n] individual with a disability to perform the essential functions of the position." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016). Therefore, "a request for an indefinite leave of absence (regardless which party had the obligation to request it) is not a reasonable accommodation under the ADA." *Peyton*, 561 F.3d at 903. Therefore, even if Mr. Jones had initiated an interactive, accommodation-seeking process, the District was not required to extend Mr. Jones additional leave without pay as a reasonable accommodation of his disability.

Mr. Jones has suggested that the District could have retained him as a paraprofessional, as not all paraprofessionals work in ALE (Dkt. No. 15-9, at 53, ¶ 18-20). The Court acknowledges that "consideration of reassignment is [] a component part of the overall reasonable accommodation duty." *Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1018 (8th Cir. 2000). However, it was Mr. Jones' responsibility to initiate the accommodation-seeking process. *See Schaffhauser*, 794 F.3d at 906 (the "interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of his disability."). By Mr. Jones' own admission, he never requested the District engage with him in an interactive, accommodation-seeking process (Dkt. No. 15-9, at 55, ¶ 13-9). He has argued that notifying the District of his cancer diagnosis and requesting leave were sufficient and that he expected the District to reach out to him to initiate the process (*Id.*, at 55-6). However, the Eighth Circuit has clearly stated that "[an] interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of his disability." *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 410 (8th Cir. 2018) (citing *Schaffhauser*, 794 F.3d at 906).

For these reasons, Mr. Jones has failed to state a *prima facie* case of discrimination based on his disability under the ADA. Based on the record evidence before the Court and viewing the record in the light most favorable to Mr. Jones, Mr. Jones has failed to establish that, at the time of his termination, he was qualified to "perform the essential functions of the job either with or without reasonable accommodation." *See Peyton*, 561 F.3d at 903. "The ADA is broad in its scope, but it only protects individuals who can perform their job." *Browning*, 178 F.3d at 1048.

For these reasons, the District is entitled to judgment as a matter of law on Mr. Jones' ADA discrimination claims.

### E. Discussion Of State Law Claim

For the reasons stated above, the Court grants Mr. Jones' motion to amend complaint/additions of parties/amendment pleadings (Dkt. No. 12). Under 28 U.S.C. § 1367(c)(3), having granted summary judgment in favor of the District on Mr. Jones' federal claim, this Court has the discretion to dismiss the state law claims. No party points to a factor that distinguishes this case from the usual case. Therefore, the balance of the factors indicates that Mr. Jones' state law claims belong in state court. *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016).

## III. Conclusion

As to the District's motion for summary judgment, there is no genuine issue of material fact in dispute, and the District is entitled to summary judgment as a matter of law in its favor on Mr. Jones' ADA claims. Accordingly, the Court grants the District's motion for summary judgment and dismisses with prejudice Mr. Jones' ADA claims against the District (Dkt. No. 15). To the extent Mr. Jones argues that the District has violated state law, the Court declines to exercise supplemental jurisdiction over those state law claims and dismisses without prejudice those claims. 28 U.S.C.A. § 1367(c)(3). The Court denies as moot the pending motion *in limine* (Dkt. No. 25).

It is so ordered this 13th day of August, 2021.

*Kristine G. Baker*
_____
Kristine G. Baker
United States District Judge